A01A2324. SMITH et al. v. JACKSON ELECTRIC MEMBERSHIP CORPORATION et al.
(560 SE2d 26)

PHIPPS, Judge.

The parents of Clemon Hull filed a wrongful death action against Jackson Electric Membership Corporation (Jackson EMC), the Utilities Protection Center, Inc. (UPC), and others. They sought recovery based on a claim that their son would not have been electrocuted while working on a construction project but for negligence by Jackson EMC and UPC in processing requests for protection from overhead high-voltage power lines under the High-voltage Safety Act (HVSA).[1] They appeal the trial court's award of summary judgment to Jackson EMC and UPC.

UPC was formed by utilities as provided by the HVSA to receive advance notifications of work performed in the vicinity of high-voltage power lines and to distribute the notifications to utility members.[2] Hull was employed on a construction project in the vicinity of high-voltage power lines owned and operated by Jackson EMC. The project's general contractor notified UPC that it needed Jackson EMC to provide protection from the overhead power lines until completion of the project on a specified date. A delay was encountered in finishing the work, and Hull was not electrocuted until after the completion date provided by the general contractor to UPC. Because the general contractor had not renewed the request for protection from the power lines by giving what is referred to in the HVSA as a "new notice" to UPC, the trial court ruled that Jackson EMC and UPC are entitled to summary judgment on plaintiffs' claim of negligence under the HVSA. On general tort principles, the court also concluded that recovery is barred because the power line was open and obvious. Because we conclude that the HVSA did not require the general contractor to give a new notice under the circumstances of this case and that the open and obvious rule does not bar plaintiffs' recovery as a matter of law, we reverse.

---

[1] OCGA § 46-3-30 et seq.
[2] OCGA § 46-3-32 (4).

One purpose of the HVSA is to prevent injury to persons or property from accidental or inadvertent contact with high-voltage electric lines.[3] To that end, the HVSA provides that no work shall be done in the vicinity of such lines unless and until the owner or operator of the lines has been notified of the work and has taken safety measures prescribed in the Act. The HVSA is applicable only to high-voltage electric lines "installed above ground level."[4]

In OCGA §§ 46-3-33 and 46-3-34, the HVSA prohibits anyone from commencing work within ten feet of any such lines unless and until the person responsible for the work has given notice to UPC at least seventy-two hours before commencing the work. Under OCGA § 46-3-34 (b), the notice must designate, among other things, the date the work will commence and the date it will be completed. OCGA § 46-3-34 (c) then requires the UPC to distribute the notice to the owner or operator of the power line, who must then contact the person responsible for the work and arrange for required safety precautions. OCGA § 46-3-34 (d) provides, "If, after such arrangements are made, a delay in commencing the work is encountered, . . . the person responsible for the work shall be required to give a new notice" again designating the start and completion dates of the work. The owner or operator of high-voltage lines has no liability for damage or loss to person or property resulting from work within ten feet of the lines unless the statutorily required notice has been given.[5]

Defense evidence showed that the great majority of requests for power line protection received by UPC relate to underground lines. UPC requires requests for underground protection to be renewed every two weeks. On the other hand, UPC has adopted a practice of keeping requests for overhead protection in effect until the person doing the work in the vicinity of the line has notified the owner or operator of the line that the project has ended.

Hull was employed by a subcontractor on a water pipeline construction project in Jackson County. On April 18, 1997, an employee of the general contractor notified UPC that work was going to be done in the vicinity of the pipeline. The contractor's employee stated that the project was expected to last about two weeks and requested protection from both overhead and underground power lines until May 2. A delay, however, was encountered in beginning the work. On April 29, the contractor's employee again notified UPC and requested underground protection for an additional two weeks. There was no discussion concerning the request for protection from overhead lines.

---

[3] OCGA § 46-3-31.

[4] OCGA § 46-3-32 (1).

[5] OCGA § 46-3-39 (a); *Santana v. Ga. Power Co.*, 269 Ga. 127-128 (1) (498 SE2d 521) (1998), and cits.

On May 13, the general contractor's employee again called UPC to renew the request for protection from underground lines. During the May 13 call, the employee, in response to questioning, specifically declined any further overhead protection for the project. The employee testified that she did not intend to cancel the request for overhead protection, but simply misunderstood the question. The request for underground protection was renewed once again on May 27.

On May 30, Hull and his co-employee Mitchell were operating a drill in the course of constructing the pipeline. Their work did not require them to come in close proximity to the overhead power lines, and, according to the defense, Hull and Mitchell attended a safety program several hours before the accident in which they were instructed not to go within 15 feet of the line. Nonetheless, while operating the drill, they accidentally came into contact with the line, and both were electrocuted.

Jackson EMC and UPC argue that they cannot be held liable because the general contractor withdrew its request for protection from overhead lines on May 13 and the notice in effect at the time of the May 30 accident contained no request for overhead protection. The Hulls counter that, notwithstanding any withdrawal of the request for overhead protection, Jackson EMC and UPC still may be held liable based on evidence showing that during the time in question, no calls for protection from overhead power lines were being forwarded by UPC to Jackson EMC due to a glitch in either Jackson EMC's or UPC's computer system. Additionally, the Hulls point out that if the system adopted by UPC had been functioning as UPC intended, the general contractor's request for overhead protection would not have ended until notification of completion of the project was given to Jackson EMC, even though UPC had been told that the request was being withdrawn. For these reasons, the Hulls argue that, notwithstanding any failure by the general contractor to give the notice required by the HVSA, a proximate cause of their son's death was Jackson EMC's and/or UPC's negligence in failing to properly handle the notifications that were given.

The question to be decided under the order appealed, however, is whether the general contractor's failure to provide UPC with a "new notice" under OCGA § 46-3-34 (d) following the delay encountered in completing the project insulates Jackson EMC and UPC from liability under the HVSA. We hold that it does not. In our opinion, the general contractor complied with the notice requirements of the HVSA through the initial notice given on April 18 and was not required to give any further notice under subsection (d) of OCGA § 46-3-34, because it does not appear that Jackson EMC ever complied with subsection (c) by contacting the general contractor so that arrange-

ments could be made for completion of the required safety precautions. Absent the utility's compliance with subsection (c), the general contractor was not required to give a new notice to UPC under subsection (d). Whether the utility's failure to comply with subsection (c) resulted from its negligence or from the negligence of UPC is a question for the jury. Therefore, the trial court erred in awarding summary judgment to Jackson EMC and UPC based on a lack of notice under the HVSA.

The trial court also erred in awarding summary judgment to Jackson EMC and UPC under the open and obvious rule. Although there is certainly evidence that the power lines would have been open and obvious to Hull if he had been looking in their direction, the circumstances surrounding his electrocution are uncertain given the fact that there are no living eyewitnesses to the event. Circumstantial evidence indicates that the accident happened because Hull accidentally ventured off of his work course and backed the machine he was operating into the lines. Under these circumstances, it cannot be said that as a matter of law that the situation was so open and obvious that an average person exercising ordinary care would have observed it and avoided the danger.[6] Moreover, even if Hull had seen the lines before the accident, he might have assumed they were de-energized.

*Judgment reversed. Smith, P. J., and Barnes, J., concur.*

DECIDED JANUARY 11, 2002 —
RECONSIDERATIONS DENIED FEBRUARY 5, 2002 — ■

*Butler & MacDougald, Daniel MacDougald III*, for appellants.
*Weinberg, Wheeler, Hudgins, Gunn & Dial, Earl W. Gunn, Christopher H. Smith, Ashley P. Nichols*, for appellees.

---

[6] See *Zack's Properties v. Gafford*, 241 Ga. App. 43, 44 (1) (526 SE2d 80) (1999); compare *Leonardson v. Ga. Power Co.*, 210 Ga. App. 574 (436 SE2d 690) (1993).